UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MERTIS TAYLOR, et al.                    CIVIL ACTION

VERSUS                                   NO: 11-1926

OCHSNER CLINIC FOUNDATION,               SECTION: R
OCHSNER HEALTH SYSTEM, INC.
and GE HEALTHCARE ITTS USA
CORP.


JOHN DOE, et al.                         CIVIL ACTION

VERSUS                                   NO: 11-2221

OCHSNER CLINIC FOUNDATION,               SECTION: R
OCHSNER HEALTH SYSTEM, INC.
and GE HEALTHCARE ITTS USA
CORP.


**ORDER AND REASONS**

Before the Court is plaintiff's motion to remand and request
for costs and attorneys fees in Civil Action Number 11-1926, and
defendants' motion to dismiss in Civil Action Number 11-2221. For
the following reasons, the Court denies plaintiff's motions in
11-1926, and grants defendants' motion in 11-2221.


I.   **BACKGROUND**

     This is a consolidated proceeding involving two putative
classes of plaintiffs, each alleging injuries against the same

defendants, Ochsner Clinic Foundation and Ochsner Foundation Health Systems, Inc. (collectively, "Oschner"), and GE Healthcare IITS USA Corp. ("GE Healthcare").

In Civil Action Number 11-1926, named plaintiff and Louisiana citizen Mertis Taylor filed suit in Orleans Parish Civil District Court alleging that defendants failed to disinfect endoscopes at the temperature recommended by the manufacturer, thus exposing plaintiff and others to risk of contracting Hepatitis B, Hepatitis C, and HIV.[1] Defendant GE Healthcare, a Vermont corporation with its principal place of business in Vermont, removed the case to federal court on the basis of diversity of citizenship under 28 U.S.C. § 1332(a).[2] Plaintiff filed this motion to remand, arguing that because both plaintiff and Ochsner have Louisiana citizenship, complete diversity is lacking, and this Court is therefore without subject matter jurisdiction.[3] GE Healthcare contends that co-defendant Ochsner was improperly joined in this action, as it is a qualified health care provider under the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1299.41, *et seq.*, and as such, plaintiff's claims are subject to review by a medical review panel before Ochsner may be hailed into court to defend an action arising from

---

[1]    No. 11-1926, R. Doc. 1-1.

[2]    No. 11-1926, R. Doc. 1.

[3]    No. 11-1926, R. Doc. 8.

malpractice.[4] Because Ochsner was improperly joined, GE Healthcare argues that its co-defendant must not be considered in this Court's assessment of the parties' citizenship.[5]

In Civil Action Number 11-2221, plaintiff John Doe sued the same defendants in federal court, contending that Ochsner and GE Healthcare were negligent in failing to follow procedures for the proper disinfection of endoscopes for use in patients like him.[6] Plaintiff alleges injuries including, *inter alia*, exposure to fatal disease, fear caused by such exposure, physical and mental pain and suffering, humiliation and embarrassment, loss of enjoyment of life, and costs associated with the need for future medical monitoring.[7] Ochsner moves the Court to dismiss the case, arguing that since plaintiff's claims have not been reviewed by a medical review panel, this action is premature and subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).[8]

## II. IMPROPER JOINDER STANDARD

Taylor's remand motion is governed by the standard for improper joinder, as set forth below.

---

[4]   No. 11-1926, R. Doc. 1.

[5]   *Id.*

[6]   No. 11-2221, R. Doc. 25-1.

[7]   *Id.*

[8]   No. 11-2221, R. Doc. 8-1.

3

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 U.S. Dist. LEXIS 10227 (E.D. La. 1995). Though the Court must remand to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, the parties do not dispute that the amount-in-controversy requirement is met. At issue, however, is whether complete diversity exists in the *Taylor* action. When a nondiverse party is properly joined as a defendant, no defendant may remove

4

the case under 28 U.S.C. § 1332. But a defendant may remove by showing that the nondiverse party was joined improperly. *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).

The parties do not dispute that Mertis Taylor and Ochsner have Louisiana citizenship for the purposes of the diversity requirement. This would ordinarily destroy complete diversity between the plaintiff and defendants. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). But the parties disagree about whether the plaintiff improperly joined Ochsner by filing suit without first receiving an opinion from a medical review panel, as required by the Louisiana Medical Malpractice Act.[9] La. R.S. § 40:1299.47(A).

The burden of demonstrating improper joinder is a heavy one, as the doctrine is a narrow  exception to the rule of complete diversity. *Smallwood*, 352 F.3d at 222. A defendant may establish improper joinder by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003). In the latter case, the Court must determine whether there is

---

[9]     In *Taylor*, No. 11-1926, plaintiff has filed a claim with the medical review panel "out of an abundance of caution to prevent prescription," but that panel had not issued an opinion as to plaintiff's claims at the time he filed suit, nor by the time he filed this motion to remand.

arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant. *Id.* at 462 (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). A "reasonable basis" for state liability requires that there be a reasonable probability of recovery, not merely a theoretical one. *Id.*

The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* In order to survive a 12(b)(6) motion to dismiss, the "[f]actual allegations [in plaintiffs' complaint] must be enough to raise a right to relief above the speculative level," which means that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The scope of the inquiry for improper joinder, however, is even broader than that for Rule 12(b)(6) because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Smallwood*, 352 F.3d at 223 n.8 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)). *See also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light *most* favorable to the

6

plaintiff." *Travis*, 326 F.3d at 649. So, too, must the Court resolve all ambiguities of state law in favor of the nonremoving party. *Id.*

## III. 12(b)(6) STANDARD

Ochsner's motion to dismiss Doe's claims is governed by the standard applicable under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949; *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.* It need

not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

## IV.  RELEVANCE OF THE LMMA IN BOTH CASES

Both the remand motion in *Taylor* and the motion to dismiss in *Doe*[10] turn on whether plaintiffs' claims against Ochsner required review by a medical review panel as a prerequisite to plaintiffs' filing suit.

The LMMA requires that claims for malpractice against a qualified health care provider[11] be presented to a medical review

---

[10]    In *Doe*, plaintiff never brought his claims before a medical review panel.

[11]    There have been no arguments set forth that Ochsner is not a "qualified health care provider" within the scope of the Act.

panel before plaintiff can file an action in court. La. R.S. §
40:1299.47(B)(1)(a)(i) ("No action against a health care provider
... may be commenced in any court before the claimant's proposed
complaint has been presented to a medical review panel."). Absent
waiver of this requirement by the parties, a malpractice suit
brought before a medical review panel's final ruling is subject
to dismissal as premature. *See Bennett v. Krupkin*, 814 So.2d 681,
685 (La. App. 1st Cir. 2002); *La. Code Civ. Proc. Ann*. art. 933
("If the dilatory exception pleading prematurity is sustained,
the premature action, claim, demand, issue or theory shall be
dismissed."). Thus, if Doe's claims against Ochsner required
review by a medical review panel, Ochsner is entitled to be
dismissed from this case.

Further, Fifth Circuit case law demonstrates that when a
plaintiff has failed to satisfy administrative requirements
before bringing suit against in-state defendants, those
defendants are improperly joined, and their citizenship can be
ignored for diversity purposes. *See Melder v. Allstate Corp.*, 404
F.3d 328, 331-32 (5th Cir. 2005) (upholding federal jurisdiction
when a sole nondiverse defendant was joined before plaintiffs had
pursued administrative remedies provided by the Louisiana
Administrative Code, and finding "no reasonable basis" that
plaintiffs might recover against that defendant); *Holder v.
Abbott Labs, Inc.*, 444 F.3d 383, 387-88 (5th Cir. 2006) (finding

improper joinder of in-state physicians sued before plaintiffs
complied with the procedural exhaustion requirements of the
National Childhood Vaccine Injury Act). Although the Fifth
Circuit has not yet applied this reasoning to a case involving an
alleged failure to comply with the LMMA's procedural
requirements, other federal district courts in Louisiana have
done so. *See Jones v. Centocor, Inc.,* 2007 U.S. Dist. LEXIS
84717, at *2-3 (E.D. La. 2007) (applying *Melder* and *Holder* and
denying remand when a plaintiff joined an in-state defendant
before presenting her claims to a medical review panel); *Senia v.
Pfizer, Inc.*, 2006 U.S. Dist. LEXIS 32555, at *9-12 (E.D. La.
2006) (same). Thus, if Taylor's claims against Ochsner required
review by a medical review panel, Ochsner is to be dismissed, and
GE Healthcare is entitled to remain in federal court.


**V.    "MALPRACTICE" UNDER THE LMMA**

The requirement of review by a medical review panel applies
only to claims of "malpractice." General tort law governs all
other tort liability on the part of a health care provider.
*Coleman v. Deno*, 813 So. 2d 303, 315 (La. 2002). Thus, in both
cases, Ochsner must be dismissed unless the wrongs alleged do not
constitute "malpractice." Plaintiffs contend that the case
against Ochsner is one of ordinary negligence governed by
Louisiana tort law, rather than one of medical malpractice, which

falls within the ambit of the LMMA. Despite plaintiffs' best efforts, however, the wrongs alleged fall squarely within the meaning of "malpractice," as defined by the Act.

In Louisiana, "[l]egislation is a solemn expression of legislative will," La. C.C. art. 2, and thus is "superior to any other source of law." La. C.C. art. 1 cmt. (c). "The starting place in interpreting any statute is the language of the statute itself." *Moss v. State*, 925 So. 2d 1185, 1197 (La. 2006). As the LMMA is special legislation in derogation of the rights of tort victims, "the coverage of the Act should be strictly construed." *Williamson v. Hosp. Serv. Dist. No. 1*, 888 So. 2d 782, 786 (La. 2004) (citing *Sewell v. Doctors Hosp.*, 600 So. 2d 577, 578 (La. 1992)). Under the LMMA, "malpractice" is defined as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient[.]" La. R.S. § 40:1299.41(A)(13). A "tort" is defined as "any breach of duty or any negligent act or omission proximately causing injury or damage to another[.]" La. R.S. § 40:1299.41(A)(22). "Health care" is "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement[.]" La. R.S. § 40:1299.41(A)(9).

The Court finds that the LMMA unambiguously applies to the claims in these cases. Plaintiffs allege that Ochsner breached its duty by negligently failing to sterilize endoscopes that were used in medical procedures on them. Absent allegations that these acts or omissions were intentional, plaintiffs have alleged an "unintentional tort ... based on health care or professional services rendered, or which should have been rendered, by a health care provider[.]" *See* La. R.S. § 40:1299.41(A)(13) (defining "malpractice"). The tort is based on "health care" services because "health care" is defined as any act (or treatment) performed or that should have been performed by the provider for the patient during his care, treatment, or confinement. *See* La. R.S. § 40:1299.41(A)(9) (defining "health care"). Here the provider allegedly failed to do an act (*i.e.*, properly sterilize endoscopes) for the patient during the patient's care, treatment, or confinement in the hospital. That plaintiffs have alleged malpractice under the statute is a conclusion that, perhaps inadvertently, plaintiff Taylor actually concedes in his motion to remand.[12]

So, too, does the case law corroborate this conclusion. In *Cashio v. Baton Rouge General Hospital*, 378 So. 2d 182, 183 (La. App. 1st Cir. 1979), plaintiffs sued a hospital for damages

---

[12]    *See* No. 11-1926, R. Doc 8-1 at 1 (alleging "injuries and mental anguish sustained *as a result of malpractice* and failing to sterilize an endoscope") (emphasis added).

caused when a patient died from a "hospital staph" infection acquired during a coronary bypass operation. Defendant raised an exception of prematurity, as the complaint had not been presented to a medical review board as required under the LMMA. *Id.* Addressing whether the injuries complained of stemmed from the hospital's "malpractice" as defined by the Act, the court noted: "It would seem equally clear that one of the obligations of a hospital to a patient is to provide clean and sterile facilities." *Id.* at 184. Despite plaintiffs' contentions that injuries resulted not from health care or professional services rendered, but from negligent performance of duties owed as a premises owner, the court held that although "the term 'Treatment' is not defined in the Act we cannot agree with plaintiffs' limited and very selective definition as being only those immediately entailed in coronary by-pass surgery." Thus, a hospital's duties associated with "treatment" of its patients includes "the furnishing of a clean and sterile environment for all patients," and a hospital staph infection falls "squarely within the conduct classified by the Act as malpractice." *Id.*

Similarly, in *Esposito v. Ethicon, Inc.*, 2011 U.S. Dist. LEXIS 76752 (M.D. La. 2011), the Middle District of Louisiana also addressed a case of improper sanitation in the hospital setting. There, the plaintiff sued the manufacturers and distributors of contaminated suture material to be used during

surgery, as well as the hospital for its negligence in using the contaminated material. *Id.* at *2-3. Defendants removed the case to federal court, arguing that the Louisiana citizenship of the hospital should be ignored because it was improperly joined. *Id.* at *4. They contended that the plaintiff's claim against the hospital was for malpractice, which required review by a medical review panel before that defendant could be joined in the action. *Id.* The court found that the plaintiff had clearly stated a claim for medical malpractice under La. R.S. 40:1299:41(A)(8) and (9), and that the hospital had been improperly joined.

While both *Cashio* and *Esposito* provide counsel here, the Court is further aided by *Coleman v. Deno*, 813 So. 2d at 315, in which the Louisiana Supreme Court offered guidance for determining whether a claim alleges "malpractice" within the scope of the LMMA. These factors, not one of which is either necessary or sufficient, include:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
> (3) whether the pertinent act or omission involved assessment of the patient's condition[,]
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
> (5) whether the injury would have occurred if the patient had not sought treatment, and
> (6) whether the tort alleged was intentional.

*Id.* at 315-16. A run through the *Coleman* factors confirms that plaintiffs have indeed presented a case of medical malpractice covered by the LMMA.

First, the wrong is clearly "treatment related." As noted in *Cashio*, a hospital's duties associated with "treatment" of its patients include "the furnishing of a clean and sterile environment for all patients." 378 So. 2d at 184. Yet plaintiffs cite *Price v. City of Bossier City,* 693 So. 2d 1169, 1172 (La. 1997), and *Nash v. Brown*, 898 So. 2d 619, 622 (La. App. 3d Cir. 2005), for the proposition that the patient must actually be receiving "health care" from the doctor or hospital when the negligence occurs. Because the inadequate sanitizing procedure allegedly occurred *before* either plaintiff underwent "treatment," the mere *use* of those unsterilized instruments did not constitute the negligent act (or so the argument goes). Under plaintiffs' reading of the case law, any and all preliminary safeguards rendered before a discrete incident of medical treatment would fall outside the Act. The Court rejects such a restrictive view of what is "treatment related."

As to the second *Coleman* factor, the claims will likely require expert medical evidence. Both plaintiffs allege that Ochsner was negligent in failing to institute and/or follow

proper protocol for sanitizing medical equipment.[13] They will be unable to prove their cases at trial without presenting experts to explain what this proper protocol entails, and the importance of following it. Plaintiffs cite *Hebert v. Fed. Express Corp.* as support for the contrary position. 695 So. 2d 528 (La. App. 4th Cir. 1997). In that case, a hospital was to receive a canister containing a patient's bone marrow cells, kept frozen by liquid nitrogen with which the cells had been packed. *Id.* at 529. Instead, the canister was damaged during transit, and the cells arrived thawed. *Id.* Plaintiffs sued the carrier and the hospital, alleging that the latter negligently failed to minimize the resulting damage to the cells. *Id.* at 530. Providing no analysis, the court found merely that "nothing in the record indicates that expert evidence would be required to determine whether Children's Hospital breached some standard of care[.]" *Id.* at 531. Here, however, the purpose of each step in the five-step sterilization procedure, and the dangers in straying from that procedure, may not be as obvious to a lay juror as the necessity of keeping frozen bone marrow cells frozen. Further, no one *Coleman* factor is to receive determinative weight, and some of the most obvious examples of medical malpractice are, after all, *obvious* - thus rendering expert testimony unnecessary. *See Pfiffner v. Correa*,

---

[13]     No. 11-2221, R. Doc. 1-1 at 6; No. 11-1926, R. Doc. 1-1 at 3.

643 So. 2d 1228, 1233-34 (La. 1994) (holding that "expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim[,]" particularly in cases "where the physician does an obviously careless act ... from which a lay person can infer negligence").

Third, while the hospital's failure to render medical equipment safe for surgery did not involve an assessment of the plaintiffs' conditions, the absence of this factor is not determinative. If it were, absurd results would follow. For example, no more obvious example of medical malpractice exists than when a doctor leaves a foreign object inside of a patient following surgery, but this medical error also would not stem directly from an "assessment of the patient's condition."

The fourth *Coleman* factor, inquiring whether the incident occurred in the context of a physician-patient relationship or within the scope of activities that a hospital is licensed to perform, is satisfied here. The plaintiffs were exposed to unsterilized equipment during surgery performed by a medical doctor - an incident clearly within the physician-patient relationship. Further, the sterilization was within the scope of activities Ochsner was licensed to perform. Thus, the fourth *Coleman* factor is easily satisfied.

17

The fifth *Coleman* factor asks whether the injury would have occurred if the patient had not sought treatment. Here, only a patient undergoing endoscopic surgery could have suffered the injuries alleged. Plaintiffs' injuries clearly could not have occurred had they not sought treatment, since a mere visitor to a hospital never would come into contact with the unsterilized endoscope. This case is thus unlike the situation in *Williamson v. Hospital Service District. No. 1 of Jefferson*, 888 So. 2d at 791, where the Louisiana Supreme Court observed that a mere visitor was as likely as the patient to suffer injury from the defective hospital wheelchair. Further, this case is also quite different from *Blevins v. Hamilton Med. Ctr., Inc.*, 959 So. 2d 440 (La. 2007), where the Supreme Court found that plaintiff's complaint did not allege medical malpractice. There, the plaintiff had been hospitalized for a groin infection and was injured when his hospital bed moved unexpectedly, causing him to fall and tear the meniscus in his right knee. *Id.* at 442. The court emphasized, in the context of the fifth *Coleman* factor, that the harm suffered was "a completely independent injury from the condition for which the plaintiff sought treatment." *Id.* at 447. Here, unlike *Blevins*, exposure to harmful diseases flowed directly from the medical procedures used to treat the condition for which plaintiffs sought treatment. The nexus between

treatment and injury is clear. The *Blevins* case does not suggest a different conclusion on these facts.

Finally, plaintiffs have alleged negligence rather than intentional conduct, thus satisfying the sixth factor.

Plaintiffs nevertheless present to the Court several Louisiana cases reaching the opposite outcome. Indeed, the Court recognizes the malleability of the six *Coleman* factors, and the discord among courts in applying them. *See, e.g.*, *Blevins*, 959 So. 2d at 446-50 (disagreement between majority and dissent regarding applicability of *Coleman* factors); *LaCoste v. Pendleton Methodist Hospital, LLC,* 966 So. 2d 519, 525-33 (La. 2007) (same); *Bickham v. Inphynet, Inc.*, 899 So. 2d 15, 17-19 (La. App. 1st Cir. 2004) (same); *Jordan v. Stonebridge, L.L.C.*, 862 So. 2d 181, 185-86 (La. App. 5th Cir. 2003) (same). Nevertheless, the cases that plaintiffs cite are readily distinguishable on their facts and thus are of limited utility in this case.

In *Sewell v. Doctors Hospital*, 600 So. 2d 577 (La. 1992), the Louisiana Supreme Court addressed a claim against a hospital that was sued when plaintiff's hospital bed collapsed while he was recuperating from surgery. The hospital contended that plaintiff's allegations stated a malpractice claim requiring submission to a medical review panel. *Id.* at 578. The court noted the distinction "between the liability of a health care provider for negligent acts or omissions in rendering health care or

19

professional services to a patient and the liability of a health
care provider for a defective thing in its custody which causes
injury to a patient in the absence of negligence by the
provider." *Id.* at 579. Thus, held the court, "[w]e do not agree
that the Legislature intended that a health care provider's
strict liability for defects in hospital furniture is to be
included in the scope of the Act limiting liability for
malpractice." *Id.* at 579. Because plaintiff "has not alleged that
any act or omission by the health care provider caused the bed to
be defective or contributed to its collapse, nor has the
plaintiff alleged that the health care provider knew or should
have known of the defects," the LMMA did not apply to the action.
*Id.* at 580. In a concurrence, Justice Hall again reiterated what
he took to be a key distinction, insisting that "plaintiffs
should be bound by their argument before this court that they do
not assert or rely on any negligence on the part of the hospital
or its staff." *Id.* at 581. Had they so relied, such negligence
"in the maintenance or use of a hospital bed uniquely designed
for and used in the treatment or handling of a patient *would be*
*malpractice* subject to the Medical Malpractice Act." *Id.*
(emphasis added).

    This case differs from *Sewell* in several important respects.
First, plaintiffs here have alleged that Ochsner was negligent in
failing to ensure that instruments used in surgery were properly

20

sterilized. This distinction alone renders *Sewell* inapposite since plaintiffs there did not even allege that the hospital was negligent in failing to provide a safe and sturdy hospital bed.[14] Moreover, this Court recognizes a significant gulf between defective hospital furniture and unsterilized surgical equipment. The former is not a medical instrument used by a physician in the course of his professional duties, while the latter is. This distinction provides the difference in the two cases.

Nor is *Romero v. Willis-Knighton Medical Center*, 870 So. 2d 474 (La. App. 2d Cir. 2004), availing for plaintiffs here. In *Romero*, plaintiff was injured when, while walking on a treadmill to rehabilitate his knee following surgery, the device suddenly changed direction, causing plaintiff to fall. *Id.* at 476. Plaintiff argued that he had not alleged a tort based upon health care services rendered, but rather, one based upon the hospital's custodial liability outside the scope of the LMMA. *Id.* at 477. The Court agreed, noting that in the cases cited by the parties:

> [T]he factor determining whether the case falls under the MMA is whether the plaintiff's injury was related to the rendition of medical services. In the present case, the defendant failed to show that the plaintiff's treadmill

---

[14] It should be apparent from the analysis in this opinion that this Court does not suggest that any alleged negligence on the part of a health care provider will bring the tort claim within the provisions of the LMMA. *See Williamson*, 888 So. 2d at 789 (reiterating that the limitations on liability conferred by the LMMA "apply only to claims of negligence by the health care provider in the provision of health care or professional services to a patient").

injury occurred during medical treatment. Without such a
showing, the matter does not fall under the MMA[.]

*Id.* at 480.

In that case, there was uncertainty as to whether the
therapy was being taken under the direction of a doctor, or
whether the injury occurred while the plaintiff was a patient in
the hospital. *Id.* at 479. No such questions exist here;
plaintiffs allege that exposure to unsterilized surgical
equipment occurred inside the hospital, during surgery performed
by a doctor. That the injuries here were caused during the course
of medical treatment - the very factor upon which the *Romero*
Court distinguished that case - indicates a key difference
rendering *Romero* of limited value.

So, too, is *LaCoste v. Pendleton Methodist Hospital, LLC*,
966 So. 2d 519 (La. 2007), unhelpful to plaintiffs. There,
plaintiffs contended that their decedent, while a patient in
defendant's hospital during Hurricane Katrina, died following the
shut-down of his life support system when the hospital lost
electrical power. *Id.* at 521. Plaintiffs alleged, *inter alia*,
negligence in the hospital's failure to implement adequate
patient evacuation and transfer plans, failure to provide a
facility with emergency power to sustain these life support
systems, and failure to provide a facility capable of preventing
flood waters from entering. *Id.* The court recognized the very

22

language of the allegations, "'designing,' 'constructing,'
'maintaining,' and 'failing to implement' all suggest premises
liability and general negligence rather than a dereliction of
professional medical skill." *Id.* at 526. In part because there
were no allegations that the victim's death "was caused by
individuals with medical training, such as doctors and nurses,
who failed to exercise proper medical skills or procedures," the
case sounded in general negligence rather than malpractice. *Id.*
at 527.

Here, however, the alleged negligence stems not from the
architectural or engineering design of the facilities or the
hospital's evacuation plan in the case of a weather emergency -
each of which bears little if any relation to medical care - but
from the staff's failure to render fit for surgery the required
medical tools. When the tort alleged relates to an injury caused
by a misfunction in a medical device instrumental in providing
medical services, the case for classifying the associated
negligence as medical malpractice becomes stronger. *See
Richardson v. Advanced Cardiovascular Systems, Inc.*, 865 F. Supp.
1210, 1217 (E.D. La. 1994) (finding allegations against a
hospital for having "negligently mishandled and damaged" a
medical device used in an angioplasty covered by the LMMA); *Renz
v. Ochsner Foundation Hospital/Clinic*, 420 So. 2d 1008, 1009-10
(La. App. 5th Cir. 1982) ("[U]se of a life support system is part

23

of 'professional services rendered' and thus falls within the [definition of malpractice in the LMMA.]").

The Court notes that its holding in this case differs from that rendered by another Eastern District of Louisiana judge in a similar matter also involving a hospital's negligent sterilization of endoscopes. In that case, Judge Africk based his opinion upon that of an Orleans Parish Civil District Court judge who found that improper endoscope sterilization was not malpractice within the LMMA's scope. *Robiho v. Univ. Healthcare Sys., L.L.C.*, 2011 U.S. Dist. LEXIS 116621, at *10 (E.D. La. 2011). Despite noting that the state trial court ruling "is not binding, and may ultimately be overturned," Judge Africk found that the analysis "provides a reasonable basis to believe that the claims do not fall within the 'strictly construed' coverage of the LMMA." *Id.* at *11 (*citing Blevins*, 959 So. 2d at 444; *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).

Respectfully, this Court disagrees, and finds that the LMMA applies to claims against Ochsner in each of the consolidated cases before the Court. That plaintiffs have stated claims for medical malpractice follows from the language and logic of the LMMA, application of the principles illustrated in *Cashio* and *Esposito*, a fair analysis of the *Coleman* factors, and a close critique of adverse precedents. Thus, in *Taylor*, No. 11-1926, the Court holds that plaintiff's premature joinder of the Ochsner

24

defendants constitutes improper joinder, and Ochsner is hereby dismissed. There being complete diversity between plaintiff and GE Healthcare, plaintiff's motion to remand is DENIED. In *Doe*, No. 11-2221, defendants' motion to dismiss is GRANTED.

## VI.   ATTORNEYS' FEES IN 11-1926

Plaintiff in *Taylor*, No. 11-1926, argues that because defendant removed the matter "without thoroughly examining the jurisdictional facts," it is liable for costs and attorneys fees. Finding removal proper in this case, the Court DENIES plaintiff's motion.

## VII. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand in Civil Action Number 11-1926 is denied, and his request that defendant pay costs and attorney's fees is similarly denied. Defendants' motion to dismiss in Civil Action Number 11-2221 is granted.

New Orleans, Louisiana, this 9th day of December, 2011.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE